## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **CITIZENS FOR RESPONSIBILITY** | ) | |
| **AND ETHICS IN WASHINGTON,** *et al.* | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Civil Case No. 16-1088 (RJL)** |
| | ) | |
| **FEDERAL ELECTION** | ) | |
| **COMMISSION,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**FILED**

**JAN 3 0 2017**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

### <u>MEMORANDUM OPINION</u>

(January _30_, 2017) [Dkt. #10]

Plaintiffs Citizens for Responsibility and Ethics in Washington ("CREW") and its executive director, Noah Bookbinder, bring this suit alleging that the Federal Election Commission ("FEC") wrongfully decided not to investigate allegations they identified in a 2012 administrative complaint they filed with the FEC.  Plaintiffs, there "complainants," alleged that the Murray Energy Corporation, along with Robert Murray, the company's chairman, president and CEO, coerced its employees into making donations to federal candidates and to the Murray Energy Corporation Political Action Committee ("Murray Energy PAC") in violation of the Federal Election Campaign Act ("FECA").  *See* Compl. ¶ 1 [Dkt. #1].  When the FEC declined to investigate those allegations, plaintiffs brought this suit under both the Administrative Procedure Act (5

U.S.C. § 706) and the provision of the FECA that creates a mechanism for private citizens to complain to the FEC about suspected violations and to ask for judicial review of the FEC's decision not to investigate (52 U.S.C. § 30109). *Id.* In order to get judicial review of the FEC's decision, however, the complainant must be an aggrieved party who suffers an injury in fact from the violation he alleges in the complaint. For the reasons explained below, I hold that the plaintiffs in this case do not meet that requirement and, therefore, the defendant's Motion to Dismiss [Dkt. #10] is GRANTED and the case is DISMISSED.

## BACKGROUND

Before the 2012 federal election, plaintiffs[1] filed an administrative complaint with the FEC alleging that Murray Energy coerced its employees into making political donations by several means: by threatening employees with termination for not donating to the company's political action committee or the "candidates of Mr. Murray's choice"; by indicating that donating was a requirement of employment and that it was being tracked; and by making incentive payments to employees, drawn from corporate treasury funds, that functioned as *de facto* reimbursement for donations. Compl. ¶¶ 2-3, 29-39. Complainants alleged to the FEC that these actions violated three different provisions of the FECA:  Count (1) the prohibition on coercing employee contributions to a corporate

---

[1] Note that the current executive director of CREW, Noah Bookbinder, was substituted for the original individual complainant, Melanie Sloan, who was in that role when she and CREW first filed with the FEC. *See* Compl. ¶ 46.

PAC, Count (2) the prohibition on making and accepting donations in the name of someone different than the true contributor, and Count (3) the prohibition on using corporate treasury funds to make direct contributions in connection with a federal election.   Compl. ¶ 40; *see also id.* at ¶¶ 4, 19-22; AR0005-0006 [Dkt. #18].

Despite the evidence that plaintiffs identify at paragraphs 29-39 of their Complaint, and despite the recommendation by the FEC's Office of General counsel that the commissioners vote in favor of investigating, only three of the six commissioners so voted. Compl. ¶¶ 47, 52.  Not having the majority vote necessary, the FEC dismissed the administrative complaint and both sides explained on the record the reasons for their vote.   Compl. ¶¶ 52-58.  Complainants responded by timely filing this suit under the judicial review provision of the FECA, which states:

> (8) (A) Any party aggrieved by an order of the Commission dismissing a complaint filed by such party under paragraph (1), or by a failure of the Commission to act on such complaint during the 120-day period beginning on the date the complaint is filed, may file a petition with the United States District Court for the District of Columbia.
>
> \*\*\*
>
> (C) In any proceeding under this paragraph the court may declare that the dismissal of the complaint or the failure to act is contrary to law, and may direct the Commission to conform with such declaration within 30 days, failing which the complainant may bring, in the name of such complainant, a civil action to remedy the violation involved in the original complaint.

The case is now before the Court on the FEC's Motion to Dismiss [Dkt. #10], which contends that the case is not properly before the Court because plaintiffs do not

have the Article III injury necessary for standing.  Plaintiffs, though they are not in any way affiliated with Murray Energy or its political activity, claim that they are harmed by its alleged violations of the FECA.  According to the Complaint, CREW "regularly reviews campaign finance reports that groups, candidates, and political parties file with the FEC disclosing their expenditures and, in some cases, their contributors."  Compl. ¶ 9.  One of CREW's missions is to "publicize[] the role of these individuals and entities in the electoral process and the extent to which they have violated federal campaign finance laws."  *Id.*  Hence, CREW alleges, it cannot fulfill its mission when it is deprived of "information about the individuals and entities funding the political activities of organizations and individuals like Murray Energy and Robert Murray."  Compl. ¶ 12. The individual plaintiff, Noah Bookbinder, is the executive director of CREW, but he joins the suit in his capacity as a voter.  The Complaint alleges "Mr. Bookbinder is harmed in exercising his right to an informed vote when a political committee fails to report the true source of its contributions, as the FECA requires."  Compl. ¶ 16.

## ANALYSIS

In order to demonstrate Article III standing, a plaintiff must establish that: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v.*

*Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defs. Of Wildlife,* 504 U.S. 555, 560-61 (1992)).  Here, plaintiffs must establish that the violations they alleged to the FEC caused them concrete, particularized injury and, if the respondents were subjected to an FEC enforcement action for those violations, that the injury would be redressed.  Looking at each of the three alleged violations, I conclude that none caused plaintiffs a concrete, particularized injury that could likely be redressed by an FEC enforcement action.

I.      **Plaintiffs do not allege any injury from Counts 1 and 3 as such.**

Plaintiffs have alleged no facts that they were harmed by the money spent by Murray Energy PAC or by the direct donations that Murray Energy employees gave.  The particularized harm they plead is not about the money in politics but about the lack of information about that money.  They have not alleged any injury in fact arising from Murray Energy's alleged corporate spending or from the employee contributions as such.  They are not, therefore, aggrieved parties as to Counts 1 and 3 in their administrative complaint.  Plaintiffs' only nexus to these acts is that they allege that this misbehavior caused the third violation of which they complain, Count 2, misreporting the true source of donations to Murray Energy PAC in violation of 2 U.S.C. § 441f and 11 C.F.R. § 110.4(b)(1), from which they purport to have suffered an informational injury.  Hence, the Court can easily dismiss, for lack of standing, plaintiffs' claims that the FEC must

revisit its vote on Counts 1 and 3 and can proceed straight to analyzing the informational injury alleged as to Count 2.

**II.     Plaintiffs' informational injury is not redressable by an FEC enforcement action on Count 2.**

Plaintiffs have a cognizable informational injury if the statute they seek to enforce (or have the FEC enforce in the first instance) entitles them to receive information that they intend to use in a particularized way. *FEC v. Akins*, 524 U.S. 11, 21 (1998); *Zivotofsky ex rel. Ari Z. v. Sec'y of State*, 444 F.3d 614, 618 (D.C. Cir. 2006). These plaintiffs claim they were denied information—"the identity of contributors" to the Murray Energy PAC—that the FECA guarantees them. Pls.' Opp'n Mem. 5 [Dkt. #14]. They claim, as they must, that the FEC's failure to enforce the statute caused this informational injury and that this suit can redress it. *See id.* at 10-11, 25.

But there is no serious argument that the provision of FECA that plaintiffs invoked in Count 2 of their administrative complaint, 2 U.S.C. § 441f, entitles them to information in any reasonably direct way. This sub-section of the FECA, now located at 52 U.S.C. § 30122, reads "No person shall make a contribution in the name of another person or knowingly permit his name to be used to effect such a contribution, and no person shall knowingly accept a contribution made by one person in the name of another person." At most that statute prevents Murray Energy PAC from accepting the donations it did or prevents Robert Murray and Murray Energy Corporation from making the incentive payments they allegedly did. *See also* 11 C.F.R. § 110.4(b)(1). Hence,

plaintiffs cannot plausibly allege that an FEC enforcement action on Count 2 would require Murray Energy PAC to disclose any information. That makes this case distinct from *Akins*, where the complainants had a cognizable injury because they sought to enforce a provision of the FECA that would make the target of the enforcement action subject to additional reporting requirements. 524 U.S. at 21.

Rather, this case is much more like *American Society for Prevention of Cruelty to Animals v. Feld Entertainment, Inc.*, 659 F.3d 13 (D.C. Cir. 2011). That case, like this one, involved a statute that prohibited certain activity that a target organization was engaged in. If the activity had been properly prohibited, plaintiffs' argument went, then the target would have had to instead apply for a permit that required disclosing information that the plaintiffs would be entitled to. That was not enough for an informational injury in fact, the D.C. Circuit held. "If API is correct about section 9— that Feld's use of bullhooks and chains constitutes a prohibited take—then Feld would be obligated to cease those practices, but nothing in section 9, even under API's view, would entitle plaintiffs to any information." *Id.* at 23. Likewise here, plaintiffs point to nothing in the statute or regulatory regime that would require Murray Energy PAC to disclose information upon a finding that they violated the prohibition on pass-through contributions. And it is too speculative to guess that in a hypothetical violation-free world, Murray Energy Corp. and Robert Murray would still make donations to Murray Energy PAC, which would then report that information. Even plaintiffs' best

7

formulation of the redress they seek is only the incidental information that an enforcement action might produce: "Even if the FEC did not require Respondents to correct previously released campaign finance disclosures, the FEC would presumably still publicize the names of the individual employees who were coerced or reimbursed and which contributions were coerced or reimbursed." Pls.' Opp'n Mem. 25. This mere hope for information is not the sort of statutory entitlement that gives rise to a cognizable informational injury that an FEC enforcement action could redress. *See Nader v. FEC*, 725 F.3d 226, 229 (D.C. Cir. 2013).

Finally, even if it were plausible that an FEC enforcement action would result in Murray Energy PAC accurately reporting information that it did not previously report, I would alternatively find that plaintiffs lack standing because they have not pleaded facts indicating how they would use that information in a way that is concrete and particularized to them. In *Akins*, it was critical to the Supreme Court's analysis of the concrete nature of the harm that the complainants there planned to use the information they would receive to evaluate candidates. 524 U.S. at 21, 24-25. Here, on the other hand, CREW claims to look at lists of contributors to PACs only "in some cases," and the Complaint does not allege what CREW would use that information for in this case in particular. Compl. ¶ 9. Nor does the Complaint explain how such information about the contributors to Murray Energy PAC would help plaintiffs evaluate candidates or causes—plaintiffs do not even attempt to identify any candidates or causes that Murray

Energy PAC supports.  To be sure, plaintiffs suggest a more particularized plan in their opposition to defendant's Motion to Dismiss: they say the information they seek would help them ferret out corruption, *see* Pls.' Opp'n Mem. 25, which is consistent with CREW's general mission to "publicize[] the role of these individuals and entities in the electoral process and the extent to which they have violated federal campaign finance laws," Compl. ¶ 9.  But such an interest in knowing or publicizing that the law was violated is akin to claiming injury to the interest in seeing the law obeyed, which simply does not present an Article III case or controversy.  *Common Cause v. FEC*, 108 F.3d 413, 418 (D.C. Cir. 1997) (no cognizable interest in knowing the FECA was violated); *accord Nader*, 725 F.3d at 230 (D.C. Cir. 2013); *see also Akins*, 524 U.S. at 24 (mere "injury to the interest in seeing that the law is obeyed . . . deprives the case of the concrete specificity" necessary for constitutional standing in a federal court).

## CONCLUSION

Because plaintiffs do not have the standing necessary to challenge the particular violations at issue in the underlying administrative complaint, the FEC's Motion to Dismiss this case is GRANTED.  An order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
**United States District Judge**

9